# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57560-4-II |
| Respondent, | |
| v. | |
| WESTON GARRETT MILLER, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Weston Garrett Miller appeals the trial court's order denying his motion to dismiss his convictions under CrR 8.3(b), chapter 5.60 RCW, and the Sixth Amendment of the United States Constitution. While Miller does not challenge the trial court's conclusions of law regarding CrR 8.3(b), he argues that the court erred in applying CrR 7.8 because he did not request collateral relief in his motion. Miller also argues that the trial court erred in concluding that his motion was untimely, in not requiring a factual hearing, and in concluding that he did not make a substantial showing that he was entitled to relief. Miller further argues that the trial court erred in concluding that chapter 5.60 RCW and the Sixth Amendment did not provide a stand-alone procedural provision for dismissal at the postconviction stage. In a statement of additional grounds for review (SAG), Miller similarly challenges the trial court's conclusions of law in its order denying his motion to dismiss under CrR 8.3(b).

The State argues that we should dismiss Miller's appeal because an order denying a defendant's CrR 8.3(b) motion is not appealable as matter of right. The State also argues that we should dismiss the appeal because the issues are moot.

We hold that the trial court did not err in treating Miller's CrR 8.3(b) motion as a CrR 7.8 motion because the motion was a collateral attack and because Miller specifically requested relief pursuant to CrR 7.8 at the hearing. We also hold that the trial court did not err in concluding that Miller's motion for collateral relief was untimely, in not requiring a factual hearing, and in concluding that he did not make a substantial showing that he was entitled to relief. Finally, because Miller's motion is a collateral attack, properly addressed under CrR 7.8, it should have been transferred to this court for consideration as a personal restraint petition (PRP). Accordingly, we do not reach the merits of Miller's Sixth Amendment and chapter 5.60 RCW arguments or his SAG; instead, we remand for the trial court to transfer the motion to this court for consideration as a PRP.

FACTS

In June 2013, Miller was convicted of murder in the first degree and four counts of unlawful possession of a firearm in the second degree. The trial court sentenced Miller to 360 months of confinement. Miller appealed his murder conviction and we affirmed. *State v. Miller*, No. 44966-8-II, slip op. at 14 (Wash. Ct. App. Dec. 2, 2014) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2044966-8-II%20Unpublished%20Opinion.pdf. The mandate issued in January 2015.

2

In March 2015, following his direct appeal, Miller reached out to his trial counsel, Joseph Enbody, to acquire his client file and discovery materials. Enbody informed Miller that he had destroyed much of the file after the conclusion of the case. Enbody suggested that Miller could obtain much of the material he sought by submitting records requests to the Lewis County Superior Court and the Lewis County Prosecutor's Office.

In April 2015, Miller wrote a second letter to Enbody requesting his client file and discovery materials. Miller explained that he needed his client file to prepare a PRP. He also explained that he could not obtain the requested materials through a records request because he is indigent. Enbody again responded that he could not provide Miller his client file or discovery materials because he no longer possessed them.

In May 2015, Miller wrote a third letter to Enbody demanding his client file and discovery materials. Enbody reiterated that he could not do so because he did not possess the requested records.

In November 2015, Miller filed a timely PRP without the benefit of his client file or discovery materials. In January 2017, this court issued an order dismissing Miller's petition.

In December 2018, over three years after his correspondence with Enbody, Miller filed a motion to compel the production of his client file and discovery materials in trial court under the same cause number as the original charges. The trial court denied Miller's motion. Miller appealed, and Division One of this court reversed and remanded "for production of Miller's client file, subject to appropriate redaction." *State v. Miller*, No. 81391-9-I, slip. op. at 4 (Wash. Ct. App. June 15, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/813919.pdf.

In June 2020, on remand, the trial court entered an order granting Miller's motion to compel. The order provided that,

> Mr. Enbody shall turn over to the Defendant his entire client file to the Prosecuting Attorney's Office for a review of necessary redactions. Any work product in the client file shall be placed in a sealed envelope, labeled "attorney/client work product" and this shall not be opened or otherwise examined by the Prosecuting Attorney's Office. Upon completion of the redaction review, the Prosecuting Attorney's Office shall forward the materials to the defendant.

Clerk's Papers (CP) at 86-87.

Enbody testified via declaration that on June 25 he delivered two separate envelopes to the front desk of the prosecutor's office and, along with it, a cover letter. The cover letter read:

> I enclose two sets of materials pursuant to the order of Judge Toynbee. The first set I have enclosed are what I believe to be non-work product materials from my files. As you know from prior correspondence my file is in no way to be considered complete.
> Also separately enclosed are documents that I consider to be work product. If you have further questions, please don't hesitate to contact me.

CP at 71.

Sara Beigh, the deputy prosecuting attorney assigned to Miller's case, testified via declaration that the State received Enbody's letter and enclosed materials on June 26. Beigh stated that during the week of June 29, she conducted an initial, cursory review of the photographs to see if they included autopsy photos. Then, on July 6, Beigh conducted a review of Miller's file with J. Bradley Meagher present—the trial attorney for Miller's case. Beigh stated that, during this review,

> While [deputy prosecuting attorney]Meagher looked on, I began to thumb through the file and we discussed that there were not many autopsy photos introduced during the trial. I then noted when I picked up a large portion of documents that were rubber banded together, in surprise, that they appeared to be work product. The cover letter appeared to be to James Armstrong, a private investigator. I did not read the letter, nor did I thumb through any of the materials. I put them down, looked at the other documents and noted one stack had a yellow sticky note that stated, "not work product."

4

CP at 81.  Beigh then placed the work product material back into the mailing envelope and resealed the documents.

In July 2021, Miller filed a motion to dismiss his convictions under CrR 8.3(b), chapter 5.60 RCW, and the Sixth Amendment.  He argued that the State's intrusion into privileged documents was presumed prejudicial, that the State could not overcome its burden to show no possibility of prejudice, and that dismissal was the appropriate remedy.  The State in response argued that Miller's motion should be denied because CrR 8.3(b) did not apply in postconviction proceedings—rather, CrR 7.8 provided the sole mechanism for postconviction relief.

At the hearing, the trial court asked the parties whether it could treat Miller's CrR 8.3(b) motion as a CrR 7.8 motion.  The State argued that the court did not have the authority to sua sponte address the motion under 7.8.  Miller's counsel responded,

> So in the *State v. Basra*,[1] the Court actually does treat 8.3 as a 7.8.  And how we know that is because then the Court relies on the one year timeline that 7.8 requires.  And then they dismiss that motion based on untimely filing.  So I would say that the Court in *State v. Basra*, which is two years, going on three years old, does allow the Court to transfer this to a post-conviction 7.8 on its own terms.
> . . . .
> I would just say that in *Basra*, it appears the Court had the option just to deny under the 8.3 for a finality of criminal prosecution and it didn't.  Instead it treated it as a 7.8 and denied it based on timeliness.  So I think the Court has the same authority as the Court outlined in *Basra*.  So that—that is all I got there.  Thank you.

Rep. of Proc.(RP) (Mar. 16, 2022) at 14-15.

On June 28, 2022, the trial court entered an order denying Miller's motion to dismiss.  The court entered the following conclusions of law:

---

[1] 10 Wn. App. 2d 279, 448 P.3d 107 (2019).

2.1 This Motion to Dismiss was specifically brought under the procedural provision of CrR 8.3(b). The other two bases for relief cited in the Motion were RCW 5.60 and the Sixth Amendment of United States Constitution, neither of which provided a procedural provision for dismissal.

2.2 A Motion to Dismiss pursuant to CrR 8.3(b) cannot be brought after the prosecution has concluded. *State v. Basra*, 10 Wn. App. 2d 279, 285-86, 448 P.3d 107 (2019), *review denied*[,] 194 Wn.2d 1020 (2020). The criminal prosecution in Mr. Miller's case was concluded several years ago.

2.3 In reviewing *State v. Molnar*, 198 Wn. 2d 500, 497 P .2d 858 (2021), the Court considered whether it was necessary to treat Mr. Miller's Motion to Dismiss as a CrR 7.8(b) motion rather than a CrR 8.3(b) motion. The Court determined under the circumstances in this case, including the different burdens of proof and potential strategic decisions for choosing one type of motion rather than the other, it was not incumbent upon the Court, nor a good idea for the Court to transfer this Motion to Dismiss to a post-conviction CrR 7.8(b) motion.

2.4 The Court considered, in the alternative, if Mr. Miller had filed the matter as a CrR 7.8(b) collateral attack. The Court found it would not have been timely, relying upon *Molnar*, CrR 7.8, and RCW 10.73.100. Mr. Miller's matter had been final for over five years, the exceptions in RCW 10.73.100 do not apply, and equitable tolling is not appropriate.

2.5 The Court also, in alternative consideration regarding a CrR 7.8(b) hearing found resolution did not require a factual hearing, noting the parties had not requested one, nor prepared for such a hearing.

2.6 Finally, in alternative consideration of what would occur, had Mr. Miller filed a CrR 7.8(b) motion, Mr. Miller did not make a substantial showing he was entitled to relief. Assuming, without finding such, that there was an intrusion to the attorney-client privilege, it took place after his conviction had been final with a direct appeal and a litigated personal restraint petition. Mr. Miller could not show prejudice to his right to a fair trial from such an intrusion.

CP at 102-03. Miller appeals.

## ANALYSIS

### I. CrR 7.8

Miller argues that all portions of the trial court's order addressing CrR 7.8 should be reversed and stricken because he did not request collateral relief. We disagree.

"Generally speaking, a person seeking to challenge their conviction or sentence has 30 days in which to initiate a direct appeal." *Molnar*, 198 Wn.2d at 508. "'[A]ny form of postconviction relief other than a direct appeal' is known as a 'collateral attack.'" *Id.* (quoting RCW 10.73.090(2)). Thus, despite its form, a trial court does not err in treating a motion for postconviction relief as a collateral attack on a judgment and sentence. *See Basra*, 10 Wn. App. 2d at 288 ("Despite the form of Basra's motion as a challenge under CrR 8.3(b), the trial court did not err in initially treating the collateral attack as a CrR 7.8 motion and transferring it to this court.").

"Most collateral attacks must be brought within 'one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.'" *Molnar*, 198 Wn.2d at 508 (quoting RCW 10.73.090(1)). "A year after th[e] judgment is final, the statutory grounds for relief that may be raised are limited." *In re Pers. Restraint of Fowler*, 197 Wn.2d 46, 49, 479 P.3d 1164 (2021); RCW 10.73.090, .100.[2] "The same time constraints apply whether the collateral attack is filed in superior court, the Court of Appeals, or [the Supreme Court]." *Molnar*, 198 Wn.2d at 508; CrR 7.8(b); RAP 16.8.1(b).

"Collateral attacks filed in superior court are governed by CrR 7.8, and 'when a superior court receives a CrR 7.8 motion, it should follow the CrR 7.8(c) procedures.'" *Molnar*, 198 Wn.2d at 508-09 (quoting *State v. Waller*, 197 Wn.2d 218, 220, 481 P.3d 515 (2021)). CrR 7.8(c)(2) provides that,

> The court shall transfer a motion filed by a defendant to the Court of Appeals for consideration as a personal restraint petition unless the court determines that the motion is not barred by RCW 10.73.090 and either (i) the defendant has made a substantial showing that they are entitled to relief or (ii) resolution of the motion will require a factual hearing.

---

[2] RCW 10.73.100 provides limited statutory grounds for when the one-year time bar does not apply; Miller does not raise any of the grounds in the statute.

"Therefore, if the superior court determines that the collateral attack is untimely, then the court must transfer it to the Court of Appeals without reaching the merits." *Molnar*, 198 Wn.2d at 509.

Here, the trial court was correct that Miller's CrR 8.3(b) motion was clearly a collateral attack on his convictions, not a CrR 8.3 motion. It was filed nearly five years after his judgment and sentence became "final" in January 2015. *See* RCW 10.73.090(3)(a). Miller labelling his motion as a CrR 8.3(b) motion does not change this conclusion because, as explained above, a "collateral attack" means "*any form* of postconviction relief other than a direct appeal." RCW 10.73.090(2) (emphasis added).

Upon concluding that the motion is a collateral attack, we then turn to CrR 7.8(c)(2). Section (c)(2) requires the trial court to transfer a CrR 7.8(b) motion to this court for consideration as a PRP "unless the [trial] court determines that the motion is not barred by RCW 10.73.090 and either (i) the defendant has made a substantial showing that they are entitled to relief or (ii) resolution of the motion will require a factual hearing." *See State v. Smith*, 144 Wn. App. 860, 863, 184 P.3d 666 (2008).

Here, the trial court found that the motion was untimely.[3] At that point, the trial court was required to transfer the matter to this court to be considered as a PRP. As our Supreme Court has emphasized, "[W]e must reiterate how important it is for superior courts to process motions for postconviction relief in accordance with CrR 7.8(c)." *Molnar*, 198 Wn.2d at 521. The trial court committed procedural error in dismissing the motion, rather than transferring it to this court as required by CrR 7.8(c)(2).

---

[3] Though unnecessary, the trial court also found that Miller did not make a substantial showing that he was entitled to relief and that resolution of the motion did not require a factual hearing.

8

Based on the foregoing, we do not address Miller's arguments regarding the trial court's findings, the Sixth Amendment, and chapter 5.60 RCW. Additionally, Miller is not entitled to file a SAG in a PRP, so we do not address arguments raised therein. For the same reasons, we do not address the State's argument regarding appealability.

II.      MOOTNESS

The State argues that Miller's appeal should be dismissed as moot because no relief can be granted to him and the appeal does not raise issues of continuing and substantial public interest. The State appears to argue that the issues are moot because the trial court did not actually rule on whether Miller is entitled potential relief under CrR 7.8. We disagree.

"An issue is moot if we can no longer provide effective relief for the claimed legal error." *State v. Booker*, 22 Wn. App .2d 80, 83, 509 P.3d 854 (2022). "We generally dismiss an appeal that raises only moot issues." *Id*.

Here, the issue is not moot. The trial court addressed (in the alternative) whether Miller would be entitled to relief under CrR 7.8 in conclusions of law 2.4 to 2.6. Thus, the trial court did in fact rule on whether Miller was entitled to collateral relief under CrR 7.8 in its final order, which can impact a later PRP filed by Miller. It follows that we could grant Miller effective relief by remanding to the trial court with instructions to transfer the motion to this court for consideration as a PRP.

CONCLUSION

The trial court did not err in concluding that Miller's motion was a collateral attack, and therefore treating the motion as one under CrR 7.8(b). However, once it concluded that the motion was untimely, the trial court was required to transfer the motion to this court as a PRP; the trial court

erred in not doing so. Rather than reach the arguments on the merits presented by the parties, we remand for the trial court to transfer to this court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Lee, J.

Glasgow, C.J.